**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DONALD RYAN SULLIVAN**                    **CIVIL ACTION**

**VERSUS**                                  **NO. 25-00243**

**TERRI MONTELEONE**                        **SECTION: "O"(1)**
**CROSBY, ET AL**

<u>ORDER AND REASONS</u>

This is a First Amendment lawsuit alleging retaliation by a public actor and her attorney for plaintiff's online criticism. Plaintiff is proceeding pro se, without the assistance of counsel. Presently, plaintiff seeks to amend his complaint to join new defendants and assert new claims against them as well as to assert a conspiracy claim against the new and existing defendants. The Court finds that plaintiff has failed to establish good cause for his out of time pleading amendment. The new claims are unrelated, the conspiracy claim lacks a factual basis, plaintiff's explanation for his delay is inadequate, and plaintiff will not suffer more than minimal prejudice if leave to amend is denied.  Accordingly, the Motion for Leave to File First Amended Complaint (Rec. Doc. 26) is DENIED.

<u>Background</u>

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff Donald Ryan Sullivan alleges that Tangipahoa Parish Justice of the Peace Terri Crosby and attorney R. Clay Monroe conspired to chill his free speech rights following Sullivan's criticism of Crosby's official conduct, including by sending a cease-and-desist letter to Sullivan, various Facebook group administrators, and to Assistant District Attorney Alexis Taylor. The letter was sent in January 2025. Sullivan filed this lawsuit on January 30, 2025.

1

In November 2025, the undersigned denied Sullivan's Motion for Leave to Amend Complaint and join Assistant District Attorney Alexis Taylor as a defendant. Sullivan sought to allege that Taylor filed a motion to revoke Sullivan's bond in an unrelated criminal matter on the basis of the cease-and-desist letter sent to her by Monroe and/or Crosby. The Court found that the motion was futile because ADA Taylor was entitled to prosecutorial immunity.

Thereafter, the District Court issued a scheduling order, setting trial for August 12, 2026. The discovery deadline is July 22, 2026. The deadline to amend pleadings passed on January 2, 2026.

On May 6, 2026, Sullivan filed a new Motion for Leave to File First Amended Complaint. He seeks to join four new defendants: Justice of the Peace Deborah S. Brunett and three officers with the Tangipahoa Parish Sheriff's Office ("TPSO"), Captain Blaine Sanders, Lieutenant Richard Lindsey, and Lieutenant Corey Michelli. He seeks to assert new claims: unlawful seizure in violation of the Fourth Amendment of the United States Constitution, deprivation of liberty without due process in violation of the Fourteenth Amendment, conspiracy to deprive civil rights, malicious prosecution, abuse of process, and Monell liability because of TPSO's alleged failure to train and supervise its officers. The new claims concern an October 2022 arrest and a June 2023 arrest in which Lindsey and Sanders were involved, as well as alleged "sham" eviction proceedings before Justice of the Peace Brunett in September 2022 and a March 2023 "tactical raid" on Sullivan's residence allegedly "solicited" by Deputy Brent Ridder, an officer under Michelli's supervision. In addition to asserting new claims arising out of these allegations, Sullivan appears to claim that the foregoing incidents amounted to retaliation for his public speech pursuant to a conspiracy that is based on alleged friendships between the defendants, an alleged "pattern" of

protecting Crosby's associates from arrest, and a meeting between Lindsey and Crosby around the time of the October 2022 arrest.

Law and Analysis

### 1. *Standard for Granting Leave to Amend*

Where the court ordered deadline for amending pleadings has passed, that schedule "may be modified" to allow for additional amendments "only for good cause and with the judge's consent." Fed. R. Civ. Proc. 16(b)(4); see S&W Enterprises, L.L.C. v. SouthTrust Bank of Alabama, NA, 315 F.3d 533, 536 (5th Cir. 2003) ("We take this opportunity to make clear that Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."). When determining whether the movant has shown good cause, the Court considers "(1) the explanation for the failure to [timely move for leave to amend]; (2) the importance of the [amendment]; (3) potential prejudice in allowing the [amendment]; and (4) the availability of a continuance to cure such prejudice.' " S&W Enterprises, 315 F.3d at 536 (quoting Reliance Ins. Co. v. Louisiana Land & Expl. Co., 110 F.3d 253, 257 (5th Cir. 1997)) (alterations in original).

If the plaintiff establishes good cause, the Court turns to Rule 15(a)(2), which provides that the court should freely give leave when justice so requires." Fed. R. Civ. Proc. 15(a)(2). The United States Court of Appeals for the Fifth Circuit instructs that the "district court must possess a 'substantial reason' to deny a request for leave to amend." Smith v. EMC Corp., 393 F.3d 590, 595 (5th Cir. 2004). Nonetheless, "that generous standard is tempered by the necessary power of a district court to manage a case." Yumilicious Franchise, L.L.C. v. Barrie, 819 F.3d 170, 177 (5th Cir. 2016) (quoting Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003)). The court may consider numerous factors when deciding whether to grant a motion for leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to

cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment." Schiller v. Physicians Res. Grp. Inc., 342 F.3d 563, 566 (5th Cir. 2003).

### 2. *Joinder of Parties*

Under Rule 20, a person may be joined as a defendant if "(A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Id. R. 20(a)(2). Even if this test is satisfied, "district courts have the discretion to refuse joinder in the interest of avoiding prejudice and delay, ensuring judicial economy, or safeguarding principles of fundamental fairness." Acevedo v. Allsup's Convenience Stores, Inc., 600 F.3d 516, 521 (5th Cir. 2010) (citations omitted). "The purpose of Rule 20(a) is to promote trial convenience and expedite the final determination of disputes, thereby preventing multiple lawsuits." Guedry v. Marino, 164 F.R.D. 181, 184 (E.D. La. 1995).

### 3. *Analysis*

Because the pleading amendment deadline passed on January 2, 2026, the Court first considers whether Sullivan has established good cause for his out of time pleading amendment.

Sullivan's explanation for his delay appears to be that he learned through Crosby's April 13, 2026, discovery responses that she and Brunett are friends and colleagues. He also cites the same discovery responses as revealing "a coordinated pre-arrest narrative among four individuals with law enforcement ties." Rec. Doc. 26, at 7. Specifically, Crosby's discovery responses state that Michelli, Constable Ridder, Vickie Harper, and Brunett had discussions with her about allegedly "dangerous" and "derogatory comments" posted by Sullivan. Id.; Rec. Doc. 33-3, at 53-

4

54. He argues this discovery response is evidence of a conspiracy because the uniformity of the descriptions of his comments "is not consistent with independent observation." Rec. Doc. 26, at 7. He also cites an incident report concerning his October 2022 arrest which allegedly reflects that Lindsey arrived at Crosby's office shortly before his arrest. Rec. Doc. 26-2. He argues that this record shows the falsity of Crosby's statement in her discovery responses that she never discussed Sullivan with Lindsey. Rec. Doc. 26, at 4-5. Sullivan does not say when he obtained the October 2022 incident report, but he may be arguing that he obtained it recently through discovery.

The Court finds Sullivan's explanation weighs against finding good cause. Importantly, Sullivan alleges that he has been complaining about the 2022 eviction proceeding since that time. He clearly knew about the 2022 and 2023 arrests and the 2022 tactical raid since the time they occurred. He provides no basis to conclude that he only recently obtained information to believe these incidents might amount to unlawful seizure, deprivation of liberty without due process, malicious prosecution, or abuse of process. Indeed, he knew enough about Brunett, Michelli, Lindsey, and Sanders to ask about them in discovery. Moreover, Sullivan does not even argue in his motion that he was unaware of these possible claims at the time he filed suit. Instead, he relies on the recent discovery of a purported conspiracy among Crosby and the new defendants. But learning that Crosby was a friend or professional acquaintance of some of these individuals does not establish a conspiracy. Nor is a conspiracy suggested by Sullivan's observation that Crosby's discovery responses similarly describe the new defendants' report of Sullivan's online comments to her. The Court finds the recent discovery responses do not provide an adequate justification for Sullivan's failure to timely move to amend. The explanation for Sullivan's delay weighs against finding good cause.

5

The Court next considers the importance of the amendment. Sullivan's new clams against the new defendants are not related to his existing claims of First Amendment violations (which he continues to assert only against Crosby and Monroe). Indeed, there appears to be no connection between the cease-and-desist letter in 2025 that triggers his First Amendment claim and the newly alleged incidents involving his arrests, a tactical raid, and an eviction proceeding all occurring in 2022 or 2023. Instead, Sullivan claims all defendants are involved in a conspiracy against him and that this justifies joining the claims together. But he has failed to allege a plausible claim for conspiracy. He relies only on the allegation that the new defendants and Crosby knew one another (mostly professionally), that the new defendants witnessed and reported Sullivan's online comments to Crosby, and that Lindsey visited the office of Crosby around the time of Sullivan's 2022 arrest. From these facts, there is no plausible basis to conclude that the defendants formed an agreement to deprive Sullivan of his civil rights.[1] Moreover, to state a claim for conspiracy under 42 U.S.C. § 1985, plaintiff must allege a race or class-based animus.[2] Sullivan's allegations wholly fail to do so. Thus, there is no valid § 1985 conspiracy claim that might tie together the otherwise unrelated incidents he complains of. The Court finds it is not important to join the unrelated claims against the new defendants arising out of the 2022 and 2023 incidents because there is no benefit

---

[1] "Conspiracy requires an agreement—and in particular an agreement to do an unlawful act—between or among two or more separate persons." Ziglar v. Abbasi, 582 U.S. 120, 153 (2017)

[2] To state a conspiracy claim under §1985, plaintiff must allege:

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

Hilliard v. Ferguson, 30 F.3d 649, 652–53 (5th Cir. 1994). "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." Griffin v. Breckenridge, 403 U.S. 88, 102 (1971). The Fifth Circuit requires a racial animus. See Cantu v. Moody, 933 F.3d 414, 419 (5th Cir. 2019)

to be had in the way of judicial economy or otherwise. The importance of allowing the amendment is minimal, and this factor weighs against granting leave to amend.

As to prejudice, joining unrelated claims would expand the scope of this lawsuit. This will increase the expense of litigating it and may require a continuance of the trial. The prejudice to Sullivan of denying leave to amend is also minimal. If appropriate, he can pursue the new and unrelated claims in a separate lawsuit. Only the conspiracy claim attempts to connect the incidents alleged together, but as noted above, there does not appear to be a factual basis for connecting these discrete incidents and alleged claims. The prejudice factor does not weigh in favor of finding good cause.

Considering Sullivan's unpersuasive explanation for his delay, the minimal importance of joining his new claims to this lawsuit, and the minimal prejudice Sullivan will suffer if leave to amend is denied, the Court finds Sullivan has not established good cause for his out of time amendment. Because good cause has not been established, the Court need not consider the Rule 15 standard. However, in light of the factors discussed above, the Court finds the interests of justice weigh against granting to leave under Rule 15 as well.

Conclusion

The Court finds Sullivan has failed to establish good cause for his out of time pleading amendment to assert unrelated claims against new defendants and to assert a conspiracy claim without factual basis. Accordingly, the Motion for Leave to File First Amended Complaint (Rec. Doc. 26) is DENIED.

New Orleans, Louisiana, this 25th day of June, 2026.

Janis van Meerveld
United States Magistrate Judge

7