**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**DONALD RYAN SULLIVAN**                          **CIVIL ACTION**

**VERSUS**                                        **NO. 25-00243**

**TERRI MONTELEONE**                              **SECTION: "O"(1)**
**CROSBY, ET AL**

ORDER AND REASONS

This is a First Amendment lawsuit alleging retaliation by a public actor and her attorney for plaintiff's online criticism. Plaintiff is proceeding pro se, without the assistance of counsel. Presently before the Court is plaintiff's Motion to Compel Discovery and for Sanctions (Rec. Doc. 27). For the following reasons, the Motion is GRANTED in part and DENIED in part.

Background

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff Donald Ryan Sullivan alleges that Tangipahoa Parish Justice of the Peace Terri Crosby and attorney R. Clay Monroe conspired to chill his free speech rights following Sullivan's criticism of JP Crosby's official conduct, including by sending a cease-and-desist letter to Sullivan, various Facebook group administrators, and to Assistant District Attorney Alexis Taylor. The letter was sent in January 2025. Sullivan filed this lawsuit on January 30, 2025.

The present discovery dispute concerns defendants' discovery responses. First, Sullivan argues that defendants' responses to his First Set of Interrogatories and First Requests for Production are procedurally defective because they were answered jointly instead of separately, because the responses were not individually verified, and because no privilege log was produced for documents withheld. Additionally, he challenges the response of "none" to certain document requests because, he claims, defendants' own pleadings confirm that the requested documents

1

exist. Sullivan also challenges Crosby's sworn response to Interrogatory No. 11, which he claims is inconsistent with certain documents he has uncovered. He complains that Crosby has not amended her response after he identified the alleged contradiction.

In response, defendants submit that their responses were not joint. Although submitted in the same document, they insist that it is clear when one defendant's response differed from the other. As to the response to Interrogatory No. 11, defendants argue that the purported contradictory evidence does not disprove Crosby's interrogatory response. Defendants do not address the remaining deficiencies raised by Sullivan.

<u>Law and Analysis</u>

1. *Joint Responses and Verification of Responses*

The Federal Rules of Civil Procedure require that "interrogatories must be answered . . . by the party to whom they are directed." Fed. R. Civ. P. 33(b)(1)(A). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." <u>Id.</u> R. 33(b)(3).

Here, Sullivan issued a single list of interrogatories directed to both Crosby and Monroe. Rec. Doc. 31-3, at 1-10. But the requests instructed each defendant to answer the interrogatories separately. <u>Id.</u> Instead, Crosby and Monroe produced a joint response. <u>Id.</u> at 12-16. Each defendant swore under penalty of perjury that the answers were true and correct. <u>Id.</u> Defendants argue that it is clear when one defendant's response differs from the other.

Defendants' response to interrogatories 4, 7, and 8 was "none" and their response to 2 and 6 was "no." Interrogatory 1 asked for the identity of those who participated in the drafting of the responses. Defendants responded with each of their names. Interrogatory 9 asked for the acts defendants believe "justified a demand for total silence." Defendants responded "Plaintiff

2

slandering and defaming defendant Crosby." These responses are clear and requiring defendants to reissue the responses separately would not offer any benefit. Defendants' amended responses to Interrogatories 3 and 5 are more detailed. The court finds that the response to Interrogatory No. 3 makes clear which defendant is responding by reporting that Monroe had no communications with Assistant District Attorney Alexis Taylor, followed by a description of Crosby's communications with Taylor. Rec. Doc. 31-3, at 62. Defendants' response to Interrogatory No. 5, however, is less clear as to who is answering what. It describes:

> Mr. Monroe drafted the letter on January 6, 2025, and provided a copy to Ms. Crosby. She forwarded it to administrator for Tangi Rants and Raves, Michelle ricks, as she was informed by Ms. Ricks that this was required by Facebook rules to prevent derogatory and defamatory posts. The letter was not posted by Ms. Crosby or Mr. Monroe.

While the defendants may have identical answers, it is also possible that part of this answer is being made by one defendant and not the other. The Court will require defendants to submit separate, sworn responses to Interrogatory No. 5 within fourteen days.

   2. *Privilege Log*

The Federal Rules of Civil Procedure require that a party withholding information on the grounds of privilege must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5). Courts typically require a privilege log that identifies "each document and provide basic information, including the author, recipient, date and general nature of the document." Benson v. Rosenthal, No. CV 15-782, 2016 WL 1046126, at *9 (E.D. La. Mar. 16, 2016) (quoting In re Papst Licensing, GmbH Patent Litig., No. Civ. A. MDL 1298, 2001 WL 1135268, at *2 (E.D. La. Sept. 19, 2001).

3

Sullivan complains that no privilege log was produced. However, the discovery responses submitted to the Court for review do not contain any objections on the ground of privilege. Accordingly, it appears no documents are being withheld on the ground of privilege. To the extent this is true, no privilege log is required. To the extent any documents are being withheld on the ground of a privilege, defendants must raise the objection as required by Rule 26(b)(5).

3. *"None" Responses*

Defendants' responses to Sullivan's first eight Requests for Production include six "none" responses, and one request without any response at all. Rec. Doc. 31-3, at 15-16. Request No. 2 asks for all communications between Monroe and the District Attorney's Office or third parties regarding Sullivan's social media posts. Request No. 3 seeks all screen shots or investigative reports regarding Sullivan's social media activity that were transmitted to the District Attorney's Office. And Request No. 6 asks for all communications between Monroe and the administrators of any social media groups regarding the cease-and-desist letters and Sullivan's potential removal from such groups.

Sullivan argues that in Monroe's response to Interrogatory No. 3, he admits that he drafted and transmitted the cease-and-desist letter. And he argues that Monroe's Answer includes the assertion that he acted in a legal and documented manner. As a result, Sullivan argues that Monroe's response to Requests for Production 2, 3, and 6, cannot be "none." Sullivan appears to believe that because the cease-and-desist letter was transmitted to social media platforms and the District Attorney's Office, it is impossible that that no emails, text messages, phone records, or written instructions were generated.

Although Monroe does not address this issue in the section of his memorandum opposing the motion to compel, in the section of his memorandum opposing Sullivan's separately filed

4

Motion to Disqualify Monroe as counsel, Monroe submits that discovery establishes that he never sent the cease-and-desist letter to ADA Alexis Taylor. Instead, Crosby spoke to her about it on the phone and then determined that a carbon copy to her was not necessary. Rec. Doc. 31-3, at 62. As to Requests for Production 2 and 3 seeking communications between Monroe and Taylor, the Court finds no reason to believe documents exist. Nonetheless, at present, the response to Request for Production 3 is blank. Defendants shall produce a written response to Request 3 within fourteen days.

As to Request 6, seeking communications between Monroe and social media group administrators, Defendants' amended response to Interrogatory No. 5 explains that Monroe provided the letter to Crosby and that Crosby forwarded to the administrator. Id.  The Court finds no reason to believe documents responsive to Request 6 exist.

Sullivan also challenges the "none" response to Requests No. 4 and No. 5, which seek billing information related to Monroe's legal representation of Crosby. Sullivan argues that this cannot be true because Monroe claims in his Answer to have acted in a legal and documented manner. Defendants do not address this issue. The Court will require defendants to revise their responses to Requests No. 4 and 5 to either produce the requested billing records, assert any appropriate objections,[1] or explain why no such documents exist, within fourteen days

4. *Response to Interrogatory No. 11*

Courts have fashioned various sanctions for a party's perjured interrogatory responses. A district court in Mississippi granted default judgment against defendants for their repeated instances of perjured testimony and interrogatory responses, evidence destruction, and concealment. Univ. of Mississippi Med. Ctr. v. Sullivan, No. 3:19-CV-459-CWR-LGI, 2021 WL

---

[1] To the extent defendants object on the basis of privilege, they must comply with Rule 26(b)(5).

4713242, at *7 (S.D. Miss. Oct. 8, 2021). Another Mississippi district court dismissed an action because of plaintiff's false statements under oath and false statements concerning his verified interrogatory responses. Chase v. Ivan Dietrich & Norco Corp., No. 3:14-CV-581-HTW-LRA, 2017 WL 4400018, at *1, 10 (S.D. Miss. Sept. 30, 2017), dismissed sub nom. Chase v. Dietrich, No. 17-60709, 2018 WL 1935930 (5th Cir. Mar. 6, 2018). These courts invoke a district court's inherent power to issue sanctions where there is clear and convincing evidence of a bad faith or willful abuse of the judicial process. See In re Moore, 739 F.3d 724, 729 (5th Cir. 2014)

In this case, Sullivan seeks sanctions for JP Crosby's allegedly false discovery response. Crosby responded to Interrogatory No. 11 stating that she had no conversations with Lt. Lindsey about Sullivan. Rec. Doc. 26-2, at 6. Sullivan contends this is inconsistent with a Tangipahoa Parish Sheriff's Office record that includes the following Dispatch Notes from his arrest for criminal trespass on October 14, 2022:

> 10/14/20222 13:08:04 JUST OF PEACE N COOPER IN REF TO EMAIL FRO
> CPT SANDERS
> . . . .
> 10/14/2022 14:23:11 151 10-97 TERRY CROSBY OFFICE
> LA0530001.   .06F700DAWS. LINDSAY R.
> . . . .
> 2022030424 10/14/2022 14:37:06: 152 ADV 10-15 1X ENRT TO CLU

Rec. Doc. 26-2, at 2. According to Sullivan, the code 10-97 means "arrives" and reflects that Lt. Lindsey arrived in Justice of the Peace Crosby's office and remained there until Sullivan was placed under arrest, reflected by the code 10-15. Rec. Doc. 27, at 10. Sullivan insists that this document establishes that Crosby's discovery responses are false. He argues, "[i]t is logically and physically impossible for the supervising officer of the arresting deputy to be stationed at Crosby's office for fourteen minutes while that arrest was actively being processed without any conversation about the subject of the arrest taking place." Id.  at 11. Sullivan seeks not only an order compelling

a truthful response to Interrogatory No. 11, but also the following sanction: an adverse inference that the meeting between Lindsey and Crosby concerned the coordination of Sullivan's retaliatory arrest.[2]

Defendants respond that the police report is inadmissible hearsay and that, in any event, it does not prove that there was a conversation between Crosby and Lindsey about Sullivan.

The Court finds that the police report does call into question Crosby's assertion that she has never discussed Sullivan with Lindsey. Why was this meeting included in the dispatch notes concerning Sullivan's arrest if Sullivan had nothing to do with the meeting? At the time of her initial discovery responses, Crosby may not have remembered a conversation in October 2022 concerning an arrest that appears wholly unrelated to the subject matter of the present lawsuit. But when Sullivan presented her with the police report and asked her to revise her response, she continued to maintain that she never discussed Sullivan with Lindsey. Yet, the Court must agree with the defendants that this record alone (assuming it was admissible evidence), does not conclusively establish that Crosby and Lindsey discussed Sullivan. The Court's ruling is without prejudice to Sullivan raising this issue at a later time if additional evidence of perjury or discovery misconduct becomes available.

Conclusion

For the foregoing reasons, Sullivan's Motion to Compel and for Sanctions is GRANTED in part and DENIED in part: within fourteen days, (1) defendants will revise their response to Interrogatory No. 5 to submit separate, verified responses; (2) defendants will produce a written response to Request for Production No. 3;  and (2) defendants will revise their responses to Requests for Production No. 4 and 5 to either produce the requested billing records, assert any

---

[2] Mr. Sullivan also asks this Court to strike defendants' affirmative defenses (a) and (c) for their pattern of discovery abuses, along with an award of his reasonable expenses for having to file this motion.

appropriate objections,[3] or explain why no such documents exist. No sanctions will be awarded at this time.

New Orleans, Louisiana, this 25th day of June, 2026.

_____
Janis van Meerveld
United States Magistrate Judge

---

[3] To the extent defendants object on the basis of privilege, they must comply with Rule 26(b)(5).