**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONALD RYAN SULLIVAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-00243** |
| **TERRI MONTELEONE CROSBY, ET AL** | **SECTION: "O"(1)** |

<u>ORDER AND REASONS</u>

In this lawsuit, plaintiff Donald Ryan Sullivan contends that his First Amendment rights were violated by Terrebonne Parish Justice of the Peace Terri Monteleone Crosby and her attorney, Russell Monroe. Sullivan is proceeding pro se, without the assistance of counsel. Presently, Sullivan moves to disqualify Monroe from representing Crosby in this lawsuit because he will necessarily be a witness and because his interests are adverse to Crosby. Because Monroe is a necessary witness and because his testimony at trial will be contested by plaintiff Sullivan, Monroe must be disqualified under Rule 3.7 of the Louisiana Rules of Professional Responsibility. This disqualification is limited to Monroe representing Crosby at trial or during any deposition. Monroe may continue to represent Crosby for other pretrial matters. Therefore, Sullivan's Motion to Disqualify (Rec. Doc. 25) is GRANTED in part and DENIED in part.

<u>Background</u>

This is a civil rights action under 42 U.S.C. § 1983 in which plaintiff Sullivan alleges that Crosby and her attorney, Monroe, conspired to chill his free speech rights following Sullivan's criticism of JP Crosby's official conduct. Specifically, Sullivan alleges that Monroe "on behalf of Defendant Crosby" sent a cease-and-desist letter to Sullivan, various Facebook group administrators, and to Assistant District Attorney Alexis Taylor. The letter was sent in January 2025.

1

Sullivan filed this lawsuit on January 30, 2025. Defendants were served, and they appeared jointly to file an Answer and Affirmative Defenses. Mr. Monroe is representing Crosby as her attorney. He is also appearing *pro se*, on his own behalf.

The trial in this matter is set to begin on September 28, 2026. The deadline to complete discovery is July 22, 2026.

Presently, Sullivan moves to disqualify Monroe from representing Crosby in this matter. He argues that Monroe occupies three irreconcilable positions in this lawsuit: he is "accused of acting in concert with a state official to suppress constitutionally protected speech," he is "attorney of record for his co-defendant," and he is the "sole necessary witness to the disputed facts of this case." Rec. Doc. 25, at 1-2. Sullivan describes these disputed facts as "who directed the drafting of the cease-and-desist letter, what instructions Crosby gave him, why he transmitted it to the prosecuting authority, and what was communicated to each platform that removed Plaintiff's posts." Id. at 2. He argues that these facts cannot be obtained from any other witness. He insists these issues are not uncontested. And, he argues that any prejudice to Crosby has been created by Monroe continuing to represent Crosby after they were named co-defendants in this case. In any event, he submits that substitute counsel can remedy any prejudice.

Sullivan argues that Monroe must also be disqualified because his interests are directly adverse to those of Crosby. He submits that their defenses are mutually exclusive because increased culpability of one will decrease culpability of the other. For example, if Monroe transmitted the cease-and-desist letter to Assistant District Attorney Taylor without authorization of Crosby, that will reduce Crosby's liability. Sullivan argues further that the conflict cannot be cured because Monroe cannot competently and diligently represent Crosby when he faces personal exposure arising out of transmission of the cease-and-desist letter. For example, Sullivan submits

that Monroe cannot "cross-examine witnesses about his own conduct while simultaneously maintaining that his conduct was Crosby's responsibility." Id. at 9.

Finally, Sullivan argues that he and the integrity of the proceedings will be prejudiced if Monroe is allowed to continue as Crosby's attorney. For example, he submits that when Monroe is being deposed as a fact witness, he cannot simultaneously act as Crosby's counsel. He argues further that Monroe's "dual role creates an inherent incentive to manage discovery in a manner that benefits Monroe's personal defense at the expense of full and accurate disclosure on behalf of Crosby." Id. at 10.

Defendants oppose. They argue that Monroe has provided all discovery requested by Sullivan and, therefore, his testimony is not necessary. For example, defendants responded to Interrogatory No. 3:

> Mr. Monroe had no communications of any kind with ADA Alexis Taylor. On January 6, 2025 Ms. Crosby called Ms. Taylor and advised that she had hired attorney Russell C. Monroe to write a cease and desist letter. She had advised Monroe that she would accomplish the carbon copy to Ms. Taylor, but after the phone conversation, she decided that it was not necessary to send to Ms. Taylor.

Rec. Doc. 31-3, at 62. They responded to Interrogatory No. 5:

> Mr. Monroe drafted the letter on January 6, 2025, and provided a copy to Ms. Crosby. She forwarded it to administrator for Tangi Rants and Raves, Michelle Ricks, as she was informed by Ms. Ricks that this was required by Facebook rules to prevent derogatory and defamatory posts. The letter was not posted by Ms. Crosby or Mr. Monroe.

Id. They also point to the affidavit of Tangi Rants and Raves Facebook group administrator Michelle Ricks, Rec. Doc. 31-4, at 2, and the cease-and-desist letter itself—which they submit is proof of its contents, Rec. Doc. 31-1.

They argue that Monroe has no need, intention, or factual basis to testify adversely to Crosby. Therefore, they argue, his disqualification for being a witness is not appropriate. Moreover,

they say Monroe's discovery responses reveal what his testimony would be, and they insist his testimony will not change. Turning to the merits of Sullivan's claims, they argue that Crosby was not acting in her capacity as a Justice of the Peace because the letter she sent does not refer to her title. Furthermore, they submit that a private citizen has every right to report suspected probation violations to the Assistant District Attorney.

Finally, defendants argue that disqualifying Monroe would "result in a hardship of depriving her of her chosen and trusted champion, and enacting the undeserved penalty of starting all over again to pay for a new attorney." Rec. Doc. 31, at 7.

<u>Law and Analysis</u>

1. *Standard for Disqualification of Counsel*

"Motions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." In re Dresser Indus., Inc., 972 F.2d 540, 543 (5th Cir. 1992). In evaluating motions to disqualify, this court considers the Rules of Professional Conduct of the Louisiana State Bar Association,[1] the ABA's Model Rules of Professional Conduct, the ABA's Model Code of Professional Responsibility. <u>Acad. of Allergy & Asthma in Primary Care v. Louisiana Health Serv. & Indem. Co.</u>, 384 F. Supp. 3d 644, 652 (E.D. La. 2018). But "a court must take into account not only the various ethical precepts adopted by the profession but also the social interests at stake." <u>F.D.I.C. v. U.S. Fire Ins. Co.</u>, 50 F.3d 1304, 1314 (5th Cir. 1995). Indeed, "[a] disqualification inquiry, particularly when instigated by an opponent, presents a palpable risk of unfairly denying a party the counsel of his choosing." <u>Id.</u> at 1316. Thus, courts must also bear in mind the right of a party to their counsel of choice and an attorney's right to freely practice her profession. <u>Id.</u> at 1314.

---

[1] The Eastern District of Louisiana has adopted the Rules of Professional Conduct of the Louisiana State Bar Association. L.R. 83.2.3.

2. *Lawyer as Necessary Witness*

Louisiana Rule of Professional Conduct 3.7 provides:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
> (1) the testimony relates to an uncontested issue;
> (2) the testimony relates to the nature and value of legal services rendered in the case; or
> (3) disqualification of the lawyer would work substantial hardship on the client.

Courts have held that "[a] necessary witness is one whose testimony is relevant, material, and unobtainable elsewhere." Treece v. Perrier Condo. Owners Ass'n, Inc., 559 F. Supp. 3d 530, 536 (E.D. La. 2021) (quoting Painter v. Suire, No. 12-CV-00511-SDD-SCR, 2014 WL 3858510, at *2 (M.D. La. Aug. 5, 2014). The text of the Louisiana Rules of Professional Conduct is identical to the American Bar Association Model Rules of Professional Conduct. The Comments to the Model Rules explain that

> A witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-witness should be taken as proof or as an analysis of the proof.

Comments to ABA Model Rule 3.7, Louisiana Legal Ethics, Standards and Commentary 239 (Dane Ciolinio ed., 2022). The exception for uncontested testimony "recognizes that if the testimony will be uncontested, the ambiguities in the dual role are purely theoretical." Id.; see 21 La. Civ. L. Treatise, Louisiana Lawyering § 14.9 ("When a matter is undisputed, testimony on the matter will have no impact on the client's interests. Thus, the usual considerations do not apply."). In considering the substantial hardship exception, courts may consider "the time and money invested by the client in the lawyer; the timing of the filing of the motion to disqualify; and whether the necessity of calling the lawyer as a witness was foreseeable." Annotations to La. Rules of Prof. Cond. 3.7, Louisiana Legal Ethics, supra, at 242.

Rule 3.7(a) "only prohibits a lawyer from acting as an advocate *at trial*." Id. at 241. "In most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage." AMEC Constr. Mgmt., Inc. v. FFIC Risk Mgmt., No. CV 13-718-JJB-EWD, 2017 WL 3602053, at *6 (M.D. La. Aug. 22, 2017) (quoting Droste v. Julien, 477 F.3d 1030, 1035 (8th Cir. 2007)); see Treece v. Perrier Condo. Owners Ass'n, Inc., 559 F. Supp. 3d 530, 540 (E.D. La. 2021) ("[D]isqualification affects only the attorney's role *at trial*; the disqualified attorney may still consult with other counsel, assist with trial preparation, prepare documents, research legal issues, handle pretrial negotiations, speak at settlement conferences, and appear at certain pretrial hearings."); LSBA Public Opinion 05-RPCC-007, at 4 (explaining that "because the concern of the Rule is to avoid confusion and possible prejudice at trial, there is no general prohibition against a lawyer who is likely to be a necessary witness participating as attorney prior to trial, drafting pleadings, attending depositions and conducting other trial preparation" provided that the client provides her informed consent). In AMEC, for example, the court held that the attorneys who were necessary trial witnesses were prohibited from appearing as advocates at trial and from defending depositions but they could otherwise act as advocates in pretrial proceedings. 2017 WL 3602053, at *7.

In addition to concerns about jury confusion, a lawyer acting as a witness may implicate a conflict of interest. Id. Thus, courts hold that "[i]f a lawyer must testify adversely to a client's interest, the client cannot waive the conflict." Horaist v. Doctor's Hosp. of Opelousas, 255 F.3d 261, 266 (5th Cir. 2001).

Furthermore, and as Sullivan concedes, "Rule 3.7 does not apply to the situation where the lawyer is representing himself." Farrington v. L. Firm of Sessions, Fishman, 96-1486 (La. 2/25/97), 687 So. 2d 997, 1000. Courts have found that the policy concerns (prejudice to the client

6

if the trier of fact views the witness as interested in the case, possibility of fomenting public distrust in the legal profession from the attorney's dual role, public's potential belief that the lawyer witness will be inclined to "warp the truth in the interest of his client") that support Rule 3.7 are not implicated when an attorney represents himself. See id. (quoting Presnick v. Esposito, 8 Conn. App. 364, 369 (1986)). Thus, Sullivan does not seek to prevent Monroe from appearing pro se on his own behalf.

In determining whether Monroe is a necessary witness, the Court considers what Sullivan will be required to prove at trial. "The First Amendment prohibits not only direct limits on individual speech but also adverse governmental action against an individual in retaliation for the exercise of protected speech activities." Keenan v. Tejeda, 290 F.3d 252, 258 (5th Cir. 2002). In a case of alleged retaliation against a citizen plaintiff, the plaintiff must show that (1) he was "engaged in constitutionally protected activity, (2) the defendants' actions caused [him] to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the defendants' adverse actions were substantially motivated against the [plaintiff's] exercise of constitutionally protected conduct." Id.  Further, "[t]o state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" West v. Atkins, 487 U.S. 42, 49 (1988) (quoting United States v. Classic, 313 U.S. 299, 326 (1941)). Courts may find a private individual was acting under color of law when "there is a sufficiently close nexus between the state and the challenged action . . .  so that the action . . .

may fairly be treated as that of the state itself." Loveberry v. Amos, 224 F.3d 764 (5th Cir. 2000) (quoting Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351 (1974)).

The Court finds that Monroe is a necessary witness to Sullivan's case against Crosby. First, Monroe must provide testimony as to his own actions in preparing and circulating (or not circulating) the cease-and-desist letter. Monroe may also be required to provide testimony as to his motivations in drafting and/or circulating the letter to address the third element of the First Amendment claim. His testimony will also be relevant to deciphering Crosby's motivations. And, his testimony may also be relevant to determining if there was a nexus between his actions and the State.

Monroe appears to argue that his testimony is uncontested (and will never change) and that, therefore, disqualification is not appropriate under the first exception. Indeed, it appears that Monroe and Crosby's testimony will be aligned. Both Monroe and Crosby assert in their discovery responses that Monroe drafted the letter but did not transmit it to the Facebook group administrator or to the Assistant District Attorney. Instead, defendants' amended discovery responses indicate it will be Crosby's testimony that she, and not Monroe, communicated with the Facebook group administrator and the Assistant District Attorney.

It is not clear, though, what they will testify as to whether they were "substantially motivated against [Mr. Sullivan's] exercise of constitutionally protected conduct." See Keeenan, 290 F.3d at 258. It is also unknown what they will testify with regard to whether there is a nexus between Monroe's actions and the State (assuming Sullivan proves Crosby was acting under color of law).

Importantly, even if there is no evidence at this time to contradict Monroe's expected testimony, at least some of the *issues* to which he must testify are not uncontested. In other words,

it is apparent that Sullivan will seek to cross-examine Monroe. This situation gives rise to the concerns underlying Rule 3.7. The jury may question the truthfulness of Monroe's testimony because they see that he is also acting as Crosby's advocate. They may question the integrity of the legal profession. The Court finds that Monroe must be disqualified from representing Crosby at trial and from representing her at depositions. This does not preclude Monroe from acting as Crosby's counsel for other pretrial matters.

The Court finds that prejudice to Crosby does not militate against disqualification. Importantly, Monroe's role as a witness in this case has been known since the suit was filed. Crosby and Monroe undertook the risk of disqualification when Monroe first enrolled on Crosby's behalf. Further, disqualification is limited to representing Crosby at trial and at depositions. Monroe can continue to work on other pretrial matters and to get the new attorney up to speed.

3. *Conflict of Interest*

Rule 1.7 of the Louisiana Rules of Professional Conduct provides:

(a) Except as provided in paragraph (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:
    (1) the representation of one client will be directly adverse to another client; or
    (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.
(b) Notwithstanding the existence of a concurrent conflict of interest under paragraph (a), a lawyer may represent a client if:
    (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
    (2) the representation is not prohibited by law;
    (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
    (4) each affected client gives informed consent, confirmed in writing.

The Fifth Circuit has considered "whether a conflict has (1) the appearance of impropriety in general, or (2) a possibility that a specific impropriety will occur, and (3) the likelihood of public

9

suspicion from the impropriety outweighs any social interests which will be served by the lawyer's continued participation in the case." F.D.I.C., 50 F.3d at 1314 (quoting In re Dresser Indus., Inc., 972 F.2d 540, 544 (5th Cir. 1992))

Sullivan argues that Monroe's interests are directly adverse to Crosby's interests in this litigation. And he argues that this conflict cannot be waived because no reasonable attorney could believe that he could provide competent representation under the circumstances. Defendants do not address the alleged conflict of interest.

As discussed above, it does not appear that Monroe's testimony will be adverse to Crosby or that it will contradict Crosby's testimony. Sullivan argues that each defendant could decrease his or her liability by shifting liability onto the other. For example, he suggests that Crosby's liability would be reduced if she claimed that Monroe had acted without her direction.[2] But there is no indication that this theory has a factual basis.[3] At this stage, the discovery responses indicate there is no dispute between Crosby and Monroe as to the facts. The Court cannot find that Crosby and Monroe's interests are materially adverse at this time. Disqualification pursuant to Rule 1.7 of the Rules of Professional Conduct is not appropriate here.

4. *Integrity of the Proceedings*

Lastly, Sullivan invokes this Court's inherent authority[4] and argues that the Court must disqualify Monroe to prevent prejudice to Sullivan. He submits that Monroe cannot be deposed as

---

[2] Relatedly, he also submits that Crosby and Monroe's interests will be adverse when damages are apportioned between them at trial.

[3] Sullivan's other examples are illogical. He cites Crosby's defense that she was acting as a private citizen, not a public official. Sullivan argues that Monroe's status as her counsel supports this theory and then says "Monroe's § 1983 liability depends on proving he acted jointly with a state actor – undermines Crosby's private citizen defense." But Monroe and Crosby are aligned on this theory. If Crosby was not acting under color of law, both she and Monroe would be free of liability under § 1983. It is Sullivan, and not Monroe, who must show that Monroe acted jointly with a state actor.

[4] See Chambers v. NASCO, Inc., 501 U.S. 32, 43-44 (1991) (discussing the court's inherent power to enforce decorum and issue sanctions).

a fact witness and also serve as Crosby's counsel during the same deposition. He submits that Monroe will be able to present opening and closing arguments, which are not available to a fact witness. And he argues that Monroe's dual role creates an incentive to manage discovery in a manner that benefits Monroe's personal defense at the expense of full and accurate disclosure on behalf of Crosby.

These arguments factor into the lawyer-as-witness and conflict of interest rules discussed above. The Court does find it necessary to rely on its inherent authority to provide further relief here.

Conclusion

Because Monroe is a necessary witness and because his testimony at trial will be contested by plaintiff Sullivan, Monroe must be disqualified under Rule 3.7 of the Louisiana Rules of Professional Responsibility. This disqualification is limited to Monroe representing Crosby at trial or during any deposition. Monroe may continue to represent Crosby for other pretrial matters. Therefore, Sullivan's Motion to Disqualify (Rec. Doc. 25) is GRANTED in part and DENIED in part.

New Orleans, Louisiana, this 25th day of June, 2026.

Janis van Meerveld<br>
United States Magistrate Judge