**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **DONALD RYAN SULLIVAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-243** |
| **TERRI MONTELEONE CROSBY, ET AL.** | **SECTION "O"** |

**ORDER AND REASONS**

This civil-rights litigation arises from Donald Sullivan's allegations that Terri Crosby, who serves as Sixth Ward Tangipahoa Parish Justice of the Peace, and local private-practice attorney Russell Monroe, sent to a third-party administrator of a public Facebook group a cease-and-desist letter, which was addressed to Mr. Sullivan and was carbon-copied to an Assistant District Attorney, in retaliation for Sullivan's exercise of his First Amendment free-speech rights in criticizing Crosby on the Facebook page "Tangi Rants and Raves." Before the Court is Defendants' motion[1] for summary judgment seeking dismissal of Sullivan's 42 U.S.C. § 1983 claim on the ground that there is no evidence that either defendant engaged in state action or acted under color of state law in connection with the confection and transmission of the cease-and-desist letter. Because Sullivan submits no evidence indicating that the defendants acted under the color of state law in connection with his allegations, the motion for summary judgment will be granted, and Plaintiff's Section 1983 claim will

[1] ECF No. 66.

be dismissed with prejudice. Consequently, the following motions will be denied as moot: Plaintiff's motion[2] requesting this Court's review of the magistrate judge's order insofar as it denied him leave to amend his complaint; Plaintiff's motion[3] seeking to supplement his witness and exhibit list; and Defendants' motion[4] to amend the scheduling order to allow amendment of their answer. Plaintiff's standalone motion[5] for sanctions shall be referred to the magistrate judge.

## I. BACKGROUND

Donald Ryan Sullivan, *pro se*, filed this civil-rights lawsuit against Terri Monteleone Crosby, a Tangipahoa Parish Justice of the Peace, and Russel Clayton Monroe, a local attorney in private practice. He alleges that, in retaliation for a social-media post critical of Crosby posted by Sullivan on the "Tangi Rants and Raves" Facebook page, Defendants sent a cease-and-desist letter addressed to him and disseminated to a local prosecuting attorney and the third-party Facebook administrator "to chill Plaintiff's First Amendment right to free speech and to intimidate and silence Plaintiff's criticism of Defendant Crosby's official conduct."[6]

[2] ECF No. 47.
[3] ECF No. 49.
[4] ECF No. 54.
[5] ECF No. 37.
[6] ECF No. 1 at ¶¶ 1-2.

### A. Allegations and Procedural History

The crux of Mr. Sullivan's *pro se* unverified civil-rights complaint is: "On or about January 6, 2025, Defendant Monroe, on behalf of Defendant Crosby, sent a cease and desist letter addressed to Plaintiff, to various Facebook group administrators, demanding that Plaintiff cease and desist from making any harassing, slanderous, libelous, or defamatory statements about Defendant Crosby, particularly on the Facebook group 'Tangi Rants and Raves.'"[7] The complaint, which alleges in conclusory fashion that the defendants "act[ed] under color of state law" is devoid of allegations indicating the content of Sullivan's speech posted to the Tangi Rants and Raves Facebook page to which the alleged cease and desist letter was directed.

According to Plaintiff, the cease-and-desist "letter threatened Plaintiff with legal action, including restraining orders and judgments for damages, if Plaintiff did not comply with the demands."[8] A few weeks after the letter was sent, Plaintiff alleges, "Plaintiff responded to Defendant Monroe's letter, denying any intention to harass, slander, or defame Defendant Crosby and asserting his First Amendment right to freedom of speech and expression."[9] In his responsive letter, Plaintiff alleges that he "expressed concern that [1] the cease and desist letter was sent to third parties, including the administrators of public Facebook groups, without first providing him with a copy" and [2] "this action was an attempt to intimidate and

---

[7] *Id.* ¶ 4.
[8] *Id.* ¶ 5.
[9] *Id.* ¶ 6.

silence him by creating the impression that legal action had been taken against him without his knowledge."[10] Plaintiff further alleges that he advised Defendants in his letter that Plaintiff "would not be deterred from exercising his right to express his opinions about Defendant Crosby's conduct and would continue to engage in public discourse on matters of public interest, including criticism of public officials" and that "any further attempts to intimidate or silence him would be met with swift and decisive legal action, including a lawsuit for damages under 42 U.S.C. § 1983."[11] In his complaint, Plaintiff additionally alleges that the defendants sent a copy of the cease and desist letter to a Tangipahoa Parish Assistant District Attorney in order to mislead the assistant prosecutor into believing that Plaintiff had committed a crime and to chill exercise of Plaintiff's First Amendment rights.[12]

Invoking the Court's federal-question jurisdiction, Donald Sullivan, *pro se*, filed this civil-rights lawsuit seeking relief under 42 U.S.C. § 1983 against Defendants Crosby, a public official and Monroe, a licensed attorney.[13] Plaintiff articulates his singular civil-rights claim as follows: "Defendants, acting under color of state law, conspired to deprive Plaintiff of his constitutional right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution" and, as redress, he seeks damages (for emotional distress, reputational harm, impairment of ability to exercise First Amendment rights) and injunctive relief (enjoining Defendants from sending further cease and desist letters regarding

[10] *Id.* ¶ 7.
[11] *Id.* ¶¶ 9, 10.
[12] *Id.* ¶¶ 11-13.
[13] *Id.* ¶¶ 2, 3.

Sullivan's criticism of Crosby).[14] Neither Defendant moved to dismiss. After Defendants answered,[15] Plaintiff filed a motion[16] seeking leave to amend his complaint but the magistrate judge denied[17] the motion.

After the parties participated in a scheduling conference, a scheduling order[18] issued setting discovery and other deadlines along with a trial date. Plaintiff filed several motions, which were heard by the magistrate judge. Plaintiff's motion[19] seeking Monroe's disqualification from representing Crosby was granted in part (as to his representation of Crosby at trial and at depositions) and denied in part (as to Monroe representing Crosby in "other pretrial matters").[20] Plaintiff's second motion[21] seeking leave to file an amended complaint was denied.[22] Plaintiff now partially appeals[23] or seeks partial review of the magistrate judge's order denying him leave to amend his complaint insofar as he was denied leave to add a state-law abuse of process claim. Plaintiff also moves[24] to supplement his witness and exhibit list. For their part, Defendants seek[25] to amend the scheduling order to allow amendment of

---

[14] *Id.* ¶¶ V.1 and 2. Though Plaintiff purports to advance a separate claim for injunctive relief at Count II, *see id.*, the substantive cause of action on which this additional form of relief is based is the singular cause of action under Section 1983.

[15] ECF No. 10.

[16] ECF No. 13.

[17] ECF No. 16.

[18] ECF No. 19.

[19] ECF No. 25.

[20] ECF No. 45.

[21] ECF No. 26. Plaintiff also filed a motion requesting that Judge Crain recuse himself but the motion was denied as moot, ECF No. 30, when the case was transferred back to this section of Court. Plaintiff also filed a motion to compel discovery and for sanctions, which was granted in part and denied in part. ECF No. 44.

[22] ECF No. 43.

[23] ECF No. 47. Insofar as the magistrate judge denied Plaintiff 's motion for leave to add in this lawsuit unrelated claims against unrelated parties, Sullivan has since filed a new lawsuit.

[24] ECF No. 49.

[25] ECF No. 54.

their answer in order to assert immunity defenses. Plaintiff additionally seeks sanctions against Monroe under Rule 11.[26]

Following a status conference, the Court revised[27] certain scheduling order deadlines. The parties opted to take very little discovery—no depositions were taken. Citing an absence of evidence that either defendant acted under color of state law, Defendants now move[28] for summary judgment dismissing Plaintiff's sole claim. Plaintiff opposes.[29]

**B. The Summary Judgment Record**

The summary judgment record is comprised of the Defendants' Affidavits, the January 6, 2025 cease-and-desist letter (submitted by Defendants in support of their motion), as well as evidence submitted by Plaintiff: Plaintiff's declaration authenticating nine exhibits: (i) the cease-and-desist letter; (ii) Plaintiff's January 20, 2025 email to Defendant Monroe; (iii) the certified-mail envelope postmarked January 23, 2025; (iv) Plaintiff's December 31, 2024 Facebook post; (v) Defendants' responses to Plaintiff's first set of interrogatories; (vi) Defendants' amended responses to interrogatories; (vii) Defendants' responses to Plaintiff's requests for production; (viii) Crosby's Oath of Office; and (ix) Plaintiff's January 22, 2025 letter responding to the cease and desist letter.

---

[26] ECF No. 37.
[27] ECF No. 62.
[28] ECF No. 66.
[29] ECF No. 74. Though Plaintiff indicated that he may seek to supplement or amend his opposition, *id.* at 1-2, only the original opposition was filed. Defendants filed no reply in further support of their motion for summary judgment.

According to this evidence, the facts are as follows. Defendant Crosby has lived in Tangipahoa Parish for 67 years and served as Justice of the Peace for 29 years.[30] On January 6, 2025, Crosby became aware that Plaintiff made statements about her on the Tangi Rants and Raves Facebook page; statements she considered "defamatory and harassing."[31] That same day, Crosby retained Monroe to investigate the statements and "if possible" to have them removed from the Facebook page.[32] According to Crosby, Michelle Ricks administers the Tangi Rants and Raves Facebook page. Ms. Ricks advised Crosby that a cease-and-desist letter was "required by Facebook rules" to prevent derogatory and defamatory posts.[33] There is no evidence in the record indicating that any of Sullivan's posts were removed from the Tangi Rants and Raves page; however, implicit in the amended interrogatory response, viewed in the light most favorable to Plaintiff, is the fact that Ms. Ricks and/or Facebook required that a cease-and-desist letter be presented to authorize removal of a third-party's post from the page administered.

Monroe has never held public office but instead has operated a private law practice for 30 years.[34] He has never been retained by Tangipahoa Parish or the State; instead, he "was retained and hired by Crosby personally for this engagement."[35] Monroe drafted a cease-and-desist letter, which was sent to Crosby and emailed to

[30] ECF No. 66-1 ¶ 1.
[31] *Id.* ¶ 2.
[32] *Id.* ¶ 3.
[33] ECF No. 74-8 (Amended Responses to Plaintiff's First Set of Interrogatories).
[34] ECF No. 66-2 ¶¶ 1-2.
[35] ECF Nos. 66-1 ¶ 4 and 66-2 ¶ 3 (the first of two paragraph 3s).

Michelle Ricks, who administers the Tangi Rants and Raves Facebook page.[36] Though the letter indicates a carbon copy was provided to Assistant District Attorney Alexis Taylor, Monroe "did not send a copy of the letter to" Taylor;[37] instead, "Crosby telephoned Assistant District Attorney Alexis Taylor and informed Ms. Taylor that Donald Ryan Sullivan was making defamatory statements about her on the 'Tangi Rants and Raves' Facebook page, and that Crosby had had Monroe send a cease and desist letter."[38]

According to Sullivan, the December 31, 2024 Facebook post which prompted the cease-and-desist letter stated "I purchased a mobile home from Vickie Harper of V&L Mobile Home Supply. She purchased it from Terri … See more."[39] The single-page screenshot of the post Sullivan submits into the summary judgment record purports to screenshot a bill of sale for a trailer and includes other illegible text.[40] At the center of this case is the January 6, 2025 cease-and-desist letter, which is reproduced in full:

[36] ECF Nos. 66-1 ¶¶ 5, 7 and 66-2 ¶ 3 (the second of two paragraph 3s). According to Defendants' amended responses to interrogatories, Ms. Crosby forwarded the cease-and-desist letter to Ricks because Crosby "was informed by Ms. Ricks that this was required by Facebook rules to prevent derogatory and defamatory posts." ECF No. 74-8.

[37] ECF No. 66-2 ¶ 4.

[38] *Id.* ¶ 8.

[39] ECF No. 74-6.

[40] *Id.*

**CLAY MONROE**
**Attorney At Law**
**P.O. Box 176**
**Ponchatoula, La 70454**
**(985) 386-4505**
**FAX (985) 386-9692**
**attorneyclaymonroe@gmail.com**

January 6, 2024

Mr. Ryan Sullivan
16043 Goudeau Road
Tickfaw, Louisiana 70466

RE: Demand To Cease and Desist

Dear Mr. Sullivan:

I represent Ms. Terri Crosby, and by this letter I demand on her behalf that you immediately cease and desist the any and all harassing, slanderous, libelous, defamatory statements that in any way pertain to Ms. Terri Crosby in any capacity. These include any verbal or written communications on any website, including but not limited to the website "Tangi Rants and Raves". No further derogatory lies will be tolerated, and failure to cease and desist any and all communications of any kind that in any way pertain to her will be result in recourse to all aspects of law including but not limited to restraining orders, and judgments for damages seeking to attach to and result in the sheriff sale of any of your income and assets to satisfy the same.

Sincerely,

Clay Monroe

cc: Ms. Alexas Taylor
ADA Parish of Tangipahoa

Sullivan replied on January 22, 2025 in a letter addressed to Monroe with carbon copy to Attorney General Liz Murrill. Sullivan writes that he "will not be intimidated or silenced by your threats and that the cease-and-desist letter "attempts to intimidate and suppress legitimate criticism of a public official." Sullivan expressed "particular[ ] concern[s]s that you sent this letter to third parties, including administrators of public Facebook groups, without first providing me with a copy." Sullivan demanded that the letter be rescinded because it "may have had a chilling effect" on his First Amendment rights. Nevertheless, Sullivan wrote that he "will not

be deterred from exercising my right to express my opinions about Ms. Crosby's conduct. I will continue to engage in public discourse on matters of public interest, including criticism of public officials." Sullivan advised that "any further attempts to intimidate or silence me will be met with swift and decisive legal action [including a] lawsuit for damages under 42 U.S.C. 1983."[41]

A week later, Sullivan filed this lawsuit. The Court now takes up Defendants' motion for summary judgment. Given the absence of evidence that Crosby or Monroe's conduct constitutes state action, the motion will be granted.

## II. LEGAL STANDARDS

### A. Concessions Afforded *Pro Se* Litigants

It is well-established that the pleadings of *pro se* litigants must be construed liberally and reviewed less stringently than those drafted by attorneys. *Thorn v. McGary*, 684 F. App'x 430, 432 (5th Cir. 2017) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Nevertheless, even *pro se* litigants must brief their arguments, *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993), and they must also "comply with the rules of procedure and make arguments capable of withstanding summary judgment." *See Thorn*, 684 F. App'x at 433 (quoting *Ogbodiegwu v. Wackenhut Corrs. Corp.*, 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. 1999) (unpublished, *per curiam*)). Simply put, "self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law." *See Hulsey v. Tex.*, 929 F.2d 168, 171 (5th Cir. 1991) (quotations and citations omitted).

[41] ECF No. 74-11.

**B. Summary Judgment**

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A dispute is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Perry v. VHS San Antonio Partners, L.L.C.*, 990 F.3d 918, 926 (5th Cir. 2021) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A fact is material if it 'might affect the outcome of the suit.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "A party asserting that a fact cannot be . . . genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations [], admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed. R. Civ. P. 56(c).

The movant has the initial burden to show that there is no genuine dispute of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). The Court "is free to grant summary judgment on the basis of any facts shown by competent evidence in the record." *Liberty Mut. Fire Ins. Co. v. Copart of Connecticut, Inc.*, 75 F.4th 522, 533 (5th Cir. 2023) (quoting *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994)).

"There can be no genuine dispute as to a material fact where a party fails 'to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Guillot ex rel T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Celotex Corp.*, 477 U.S. at 322). Simply put, "[w]hen a party moves for summary judgment on an issue where that party bears the ultimate burden of proof, it must establish [its] case with admissible evidence." *Favela v. Collier*, 91 F.4th 1210, 1212 (5th Cir. 2024) (citation omitted). If, however, the nonmovant bears the burden of proof at trial on the dispositive issue, "'the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.'" *In re La. Crawfish Producers*, 852 F.3d 456, 462 (5th Cir. 2017) (quoting *Lindsey v. Sears Roebuck & Co.*, 16 F.3d 616, 618 (5th Cir. 1994)). "'If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.'" *Guillot ex rel T.A.G. v. Russell*, 59 F.4th 743, 750 (5th Cir. 2023) (quoting *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 517 (5th Cir. 2012)).

In considering the record, the Court "view[s] the evidence in the light most favorable to the nonmovant"—here, Plaintiff Sullivan—"and draw[s] all reasonable inferences in that party's favor." *Flores v. Wal-Mart Stores Texas, L.L.C.*, 855 F. App'x 203, 204 (5th Cir. 2021) (quoting *Adams v. Alcolac, Inc.*, 974 F.3d 540, 543 (5th Cir. 2020)). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have

submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

### C. Civil-Rights Claims Under 42 U.S.C. § 1983

Enacted pursuant to Congress's authority to enforce the Fourteenth Amendment, 42 U.S.C. § 1983 "provides a cause of action against state actors who violate an individual's rights under federal law." *Filarski v. Delia*, 566 U.S. 377, 380 (2012). It provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any ... person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. § 1983.

To establish § 1983 liability, the plaintiff bears the burden of proving these elements: (1) a deprivation of a right secured by federal law (2) committed by a state actor, that is, a person acting under color of state law. *See Loera v. Kingsville Ind. Sch. Dist.*, 151 F.4th 813, 818 (5th Cir. 2025) (citations omitted); *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citation omitted). Satisfaction of the first element implements the principle that "Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law." *Victoria W.*, 369 F.3d at 482 (citations omitted). And, as for the color of state law or state actor element, "[t]he traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer

is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1988) (citation omitted). Critically, "[m]ere private conduct, no matter how discriminatory or wrongful, is excluded from § 1983's reach." *Cornish v. Corr. Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005) (modified citation).

"The performance of official duties creates two potential liabilities, individual-capacity liability for the person and official-capacity liability for the municipality." *Turner v. Houma Mun. Fire & Police Civil Serv. Bd.*, 229 F.3d 478, 484 (5th Cir. 2000). Plaintiff's "[p]ersonal-capacity suit[ ] seek[s] to impose individual liability upon a government officer for actions taken under color of state law." *See Hafer v. Melo*, 502 U.S. 21, 25 (1991) (citation omitted). Thus, "[o]n the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right." *Id.*

## III. ANALYSIS

Defendants advance a single ground supporting summary judgment in their favor: the challenged conduct, transmitting a cease-and-desist letter, was private or personal conduct not attributable to the State and thus fails to implicate the state action element of Section 1983 liability. To withstand summary judgment on his Section 1983 claim, Plaintiff must submit or identify evidence in the record that he suffered a constitutional deprivation committed by a person acting under color of state law. He fails to do so.

### A. Whether a State Official Engaged in State Action or Private Conduct Turns on Substance, Not Labels.

Section 1983's "under color of law" requirement is virtually identical to the Fourteenth Amendment's state action doctrine. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 928-29 (1982). Neither Section 1983 nor the constitutional predicate to Sullivan's Section 1983 claim—the First Amendment made applicable to the states by the Fourteenth Amendment—reach a private defendant's conduct. *See id.*; *see also Mackey v. Rising*, 106 F.4th 552, 558 (6th Cir. 2024) ("As a constitutional matter, the Fourteenth Amendment expanded the First Amendment to cover the speech-suppressing actions of a 'State.'"). Indeed, the First Amendment "prohibits only *governmental* abridgement of speech[; it] does not prohibit *private* abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804, 808 (2019) (citations omitted, emphasis in original) ("The Free Speech Clause of the First Amendment constrains governmental actors and protects private actors."). "By enforcing that constitutional boundary between the governmental and the private," the Supreme Court observed, "the state-action doctrine protects a robust sphere of individual liberty." *Id.* at 808.

Section 1983 applies "only when 'the claimed deprivation has resulted from the exercise of a right or privilege having its source in state authority.'" *Lindke v. Freed*, 601 U.S. 187, 198 (2024) (citation omitted). "[U]nder the 'joint action test', *private* actors will be considered state actors where they are 'willful participant[s] in joint action with the State or its agents.'" *Hernandez v. Causey*, 124 F.4th 325, 335 (5th Cir. 2024) (citations omitted, emphasis in original).

The state action and under-color-of-state-law doctrines track the general rule that constitutional rights generally restrict "state action" but not "private conduct." *Lindke*, 601 U.S. at 194-95; *Hernandez*, 124 F.4th at 336 (quoting *Lindke,* 601 U.S. at 198) (observing that "'state action exists only when' the constitutional deprivation 'ha[s] its source in state authority'"). In most cases, "state action is easy to spot." *Id.* Tough cases generally present one of two problems: "whether a nominally private person has engaged in state action for purposes of § 1983[,]" or, what *Lindke* confronted, "whether a state official engaged in state action or functioned as a private citizen." 601 U.S. at 195 (citations omitted).[42] Recognizing that public officials have private lives, the Supreme Court observed that "the state-action requirement exclude[s] from liability 'acts of officers in the ambit of their personal pursuits,' [thereby] 'protect[ing] a robust sphere of individual liberty for those who serve as public officials or employees[.]'" *Id.* at 196 (citations omitted). Ultimately, a Section 1983 plaintiff "cannot hang his hat on [the public official's] status as a state employee" because "[t]he distinction between private conduct and state action turns on substance, not labels[.]" *Id.* at 197.

*Lindke* elucidates a framework for distinguishing official conduct falling within the Fourteenth Amendment and Section 1983 from personal conduct falling outside. *See Mackey v. Rising*, 106 F.4th 552, 559 (6th Cir. 2024) (observing that "[s]tate

---

[42] In *Lindke v. Freed*, the Supreme Court addressed whether a state official engaged in state action or functioned as a private citizen. Freed, the city manager of Port Huron, Michigan, maintained a Facebook page, where he posted both personal updates and information relating to his government job. *Id.* at 191–93. After a constituent, Lindke, posted negative comments, Freed deleted the negative comments and blocked Lindke from commenting on Freed's Facebook page. *Id.* at 190–91, 193. Lindke sued, alleging Freed violated his First Amendment rights. *Id.* at 193.

employees do not work for the State every hour of the day[; t]hey also undertake all sorts of private activities on their own time" and further that *Lindke* "tailored [*Griffin v. Maryland*'s] general test to the specific social-media context"). *Lindke*'s two-part test first requires that the state official must have "possessed actual authority to speak [or act] on the State's behalf" and, second, that the state official must have "purported to exercise that authority[.]" *Id.* Assessing whether the state-action requirement is met generally is a "fact-intensive inquiry." *Lindke*, 601 U.S. at 197.

As to the first part, there is a "bedrock requirement that 'the conduct allegedly causing the deprivation of a federal right [must] be fairly attributable to the State[,]' [*i.e.,*] traceable to the State's power or authority." *Lindke,* 601 U.S. at 198 (citations omitted). To be sure, determining the scope of an official's actual authority anchored in state law is a critical threshold issue: "the state-action doctrine requires that the State . . . granted an official the type of authority that he used to violate rights—*e.g.,* the power to arrest—it [thus] encompasses cases where his 'particular action'—*e.g.,* an arrest made with excessive force—violated state or federal law." *Id.* at 200 (citations omitted).

As to the second part, to qualify as state action, the plaintiff must show that "the official is purporting to exercise state authority." *Id.* at 201-03 (illustrating by hypothetical that context matters in determining whether an official invoked his official authority, *e.g.,* where a school board president announces at a school board meeting that the board lifted pandemic restrictions on public schools, versus when one is merely engaged in private action in a "personal capacity as a friend and

neighbor," *e.g.,* the next evening the same school board president at a barbeque with friends shares that the board lifted the restrictions).

"[W]hen the challenged conduct 'entail[s] functions and obligations in no way dependent on state authority,' state action does not exist." *Id.* at 198–200 (citations omitted) ("[T]he '[m]isuse of power, possessed by virtue of state law,' constitutes state action"; but "[t]o misuse power, . . . one must possess it in the first place[.]"). Indeed, the principles applied in *Lindke* are simply a gloss on the well-established principles frequently applied by the Fifth Circuit. Informing whether a plaintiff has alleged facts sufficient to plead that an officer misused official power, the Fifth Circuit has elaborated on the scope of the essential color-of-state-law prerequisite to § 1983 liability:

> Under "color" of law means under "pretense" of law. Generally, if an officer is performing their official duties, their acts "are included whether they hew to the line of their official authority or overstep it," though "acts of officers in the ambit of their personal pursuits are plainly excluded." That said, even if an officer acts for purely personal reasons, he or she may still act under color of law if they are "acting by virtue of state authority."

*Gomez v. Galman*, 18 F.4th 769, 775-76 (5th Cir. 2021) (internal citations omitted) (observing that "whether a police officer is acting under color of law does not depend on duty status at the time of the alleged violation").

Assessing the under-color-of-law element thus compels consideration of "(1) whether the officer 'misuse[d] or abuse[d] his official power,' and (2) if 'there is a nexus between the victim, the improper conduct, and [the officer's] performance of official duties.'" *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (quoting

*Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002) (emphasis added)). Thus, "[i]f an officer pursues personal objectives without using his official power as a means to achieve his private aim, he has not acted under color of state law." *Id.* (citing *Townsend*, 291 F.3d at 861).

These principles doom Sullivan's Section 1983 claim against Crosby and Monroe.

**B. There Is No Evidence that Defendants Acted Under Color of State Law in Disseminating the Cease-and-Desist Letter.**

At this summary-judgment stage of proceedings, Sullivan must identify evidence in the record demonstrating that Crosby was clothed with the authority of her justice of the peace office in transmitting the cease-and-desist letter. Because Sullivan anchors proof of his claim to labels—Crosby's status as a justice of the peace—he cannot withstand summary-judgment dismissal of his Section 1983 lawsuit.

Similar to *Lindke*, the issue presented by Defendants' motion for summary judgment is whether a public official—here, Crosby—engaged in state action or functioned as a private citizen with respect to the specific challenged conduct. Here, there is no dispute concerning the nature of the conduct at issue. Sullivan targets as wrongful the cease-and-desist letter addressed to him, sent to the Facebook administrator, and relayed to an Assistant District Attorney.[43] Sullivan identifies no source of authority—no statute, regulation, ordinance, or custom—encompassing the

[43] *See* ECF No. 74 at 2 (Plaintiff's Opposition memorandum) (arguing that "the cease-and-desist letter was never a legitimate legal action")

conduct Sullivan challenges, *i.e.*, a source in law empowering a justice of the peace like Crosby to threaten or institute civil litigation or to inform others regarding perceived defamatory or harassing speech. The only evidence in the summary judgment record indicates that Crosby engaged in a purely personal pursuit in hiring an attorney in private practice, Monroe, to send a cease-and-desist letter pertaining to Sullivan's online posts. Because the state-action requirement precludes Section 1983 liability for "merely private conduct, no matter how discriminatory or wrongful[,]" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (citation omitted), Defendants are entitled to judgment as a matter of law dismissing Sullivan's claims with prejudice.[44]

**1. There is no evidence in the record indicating that Defendants exercised (or misused) actual authority delegated by the State when they sent the letter.**

Sullivan's Section 1983 claim fails the first step of the state action doctrine. Summary judgment in Defendants' favor is warranted because Sullivan fails to show that Crosby possessed the actual authority to speak or act on behalf of the State by virtue of statute, ordinance, regulation, or custom and usage with respect to the circumstances surrounding the cease-and-desist letter. *See Lindke*, 601 U.S. at 204. In fact, Sullivan identifies no source delegating such power to Crosby. "If the plaintiff cannot make this threshold showing of [actual] authority, he cannot establish state action." *Id.* at 201.

[44] The Court need not analyze Monroe's alleged state action separately as Plaintiff lumps them together and, in any event, Monroe's would be merely derived from Crosby's under a joint action analysis rendered moot by the Court's determination that no evidence of state action exists in the record.

Absent from the record is evidence indicating that Crosby's and Monroe's conduct was performed pursuant to Crosby's state-granted authority as justice of the peace. The evidence simply does not support Plaintiff's conclusory argument that Crosby *used her office* to invoke the criminal process against him and to request that the Facebook page administrator remove a post; rather, the evidence indicates that Crosby engaged in a purely personal pursuit in retaining a private attorney to threaten to sue Sullivan and advising others that she perceived his Facebook post to constitute harassment and defamation. Plaintiff fails to make the threshold showing of actual authority and therefore cannot establish state action.

Here, the specific conduct of which Sullivan complains is Crosby's and Monroe's transmittal of the cease-and-desist letter to him, a Facebook administrator, and alerting an Assistant District Attorney regarding the letter. To constitute state action, these acts must be attributable to the State by tracing the acts to the State's power or authority. *See id.* at 198. Sullivan fails to do so; there is no evidence in the record indicating that the State or Parish (actually or apparently)[45] authorized Crosby to hire an attorney to threaten civil litigation pertaining to posts made by Sullivan on the Tangi Rants and Raves Facebook page or to send the letter to a third-party Facebook administrator so that the post would be removed from the Facebook page, or to call an Assistant District Attorney to inform her regarding the same.

[45] Courts applying *Lindke* have held that state action only exists if an individual acts with actual authority to engage in the specific conduct of which the plaintiff complains. *See, e.g.*, *Martinez v. City of Aurora*, 174 F.4th 745, 756 (10th Cir. 2026) (observing that "[t]he upshot is, after *Lindke*, apparent authority does not suffice to show state action").

Pursuing private litigation, or threatening it, is not subject to the control of the Parish or State or attributable thereto. Indeed, Defendants identify persuasive authorities holding that sending a cease-and-desist letter is not an action taken under color of state law and thus cannot serve to anchor a Section 1983 claim. *See, e.g., Meadows v. Enyeart*, 627 F. App'x 496, 501 (6th Cir. 2015) (holding that public officials who hired private attorneys to send cease-and-desist letter did not act under color of state law); *Gritchen v. Collier*, 254 F.3d 807, 812-13 (9th Cir. 2001) (holding that police officer was not acting under color of state law when he threatened to sue the motorist plaintiff for defamation due to a complaint the motorist filed with the police department against the officer).

Critically, there is nothing in the record indicating that Crosby's and Monroe's conduct in drafting and disseminating a cease-and-desist letter threatening civil litigation against a fellow citizen who posted critical content on a Facebook page was actually part of Crosby's official duties as justice of the peace. To the contrary, the only evidence in the record probative of whether Crosby and Monroe acted under color of State law—Crosby's and Monroe's attestations in their affidavits—indicates that Crosby's engagement of private attorney Monroe to send the cease-and-desist letter was personal in nature. There is no actual controversy on this point. Crosby's and Monroe's affidavits demonstrate that Crosby retained Monroe to draft and send the cease-and-desist letter, which threatens civil litigation. To be sure, Sullivan does not dispute that Monroe is a private attorney who was *not* retained by the Parish or the

State.[46] Sullivan identifies nothing in the record that indicates that Crosby's or Monroe's conduct—threatening civil litigation and alerting others to perceived harassing or defamatory conduct—was authorized by the State or Parish or that either acted out of a state-imposed duty. Absent evidence that Crosby possessed actual authority to draft and send a cease-and-desist letter directed to addressing or removing critical posts on a Facebook page, summary judgment in Defendants' favor is warranted. *See Lindke*, 601 U.S. at 198-99 (explaining that state action is absent if "the challenged conduct 'entail[s] functions and obligations in no way dependent on state authority'").

This same first-step analysis dooms Sullivan's claim insofar as he targets Crosby's conduct in "telephoning" a local prosecuting attorney to convey Crosby's belief that she was being harassed and her threat of civil litigation against Sullivan regarding his social media posts. Absent from the record is any source of state authority delegating to Crosby the power to invoke the criminal justice process or call a prosecuting attorney by virtue of her justice of the peace role. Instead, just like any person in their private endeavors can retain an attorney to threaten civil litigation against another, so too any ordinary citizen may report to others, including law enforcement authorities, that a fellow citizen was posting to social media content she and her attorney deemed defamatory or harassing. *See, e.g., Redding v. St. Edward*, 241 F.3d 530, 532 (6th Cir. 2001) (holding that off-duty officer who called 911 to report

---

[46] ECF No. 74-1 ¶ 4. Plaintiff purports to take issue with whether Monroe was paid by Crosby for his services as her private attorney. Even if there was an actual controversy about the issue of payment versus "uncompensated favor" in the record (though the Court observes there is no such *genuine* dispute), the fact of payment is not material.

a woman banging on the doors of a home where he and his daughter were staying was not acting under color of state law because the 911 calls were "functionally equivalent to that of any private citizen calling the police for assistance"); *Baldridge v. Vance*, No. 26-39, 2026 WL 3094395, at *4 (E.D. Ky. Oct. 16, 2026) (finding first part of the state-action test not met where schoolboard official defendant obtained protective order against vocal schoolboard critic plaintiff, who identified no state law, ordinance, or regulation that compelled or directed the officer to seek the protective order).

The summary judgment evidence indicates that Crosby was engaged in a personal pursuit in transmitting the cease-and-desist letter; it does not indicate that her actions were possible only because she was "clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49 (1998). Summary judgment is warranted for this reason alone.

**2. There is no evidence in the record indicating that Defendants purported to act under state authority in connection with transmitting the cease-and-desist letter.**

Second, even if Plaintiff had submitted evidence showing—or even if the Court could conceive of a broad enough justice-of-the-peace job description indicating—that the State or Parish vested Crosby with actual authority to hire an attorney in private practice to draft and send on her behalf a cease-and-desist letter to Sullivan and Facebook administrators, and to alert a local prosecuting attorney that she had done the same, summary judgment in Defendants' favor is warranted because Plaintiff

fails step two of the state action test. He fails to show that Crosby purported to use actual authority conferred by the state. *See Lindke*, 601 U.S. at 769 (citation omitted).

Crosby invokes her official authority only when she acts in fulfillment of her responsibilities as justice of the peace. *See id.* Absent from the record is any evidence indicating that Crosby used her power as a justice of the peace to threaten civil litigation, persuade a third-party Facebook administrator remove his Facebook posts, or telephone a prosecutor to discuss the letter her privately retained attorney had sent. Plaintiff has failed to identify any evidence demonstrating that Crosby could or did use her power as a justice of the peace to threaten private litigation, have Sullivan's post deleted, or instigate criminal proceedings against him. *Cf. Kallinen v. Newman*, No. 22-20383, 2023 WL 2645555, at *2-3 (5th Cir. Mar. 27, 2023) (affirming Rule 12(b)(6) dismissal of § 1983 First Amendment claim, pre-*Lindke*, based on a judge deleting critical comments from his Facebook page, which he used for campaign purposes, and blocking the user because plaintiff's allegations were insufficient to demonstrate the judge "acted under color of state law"). Nor is there any evidence that Crosby retaliated against Sullivan for his Facebook post by resorting to unfavorable treatment of him in any proceeding pending before Crosby in her capacity as justice of the peace. *See id.*

Based on the summary judgment record, Crosby's conduct is not attributable to the state. Rather, Crosby availed herself of a civil remedy available to any private person: the threat to institute civil legal action for another's allegedly wrongful or harmful conduct. Crosby neither had nor needed authority from her role as justice of

the peace to send a cease-and-desist letter, transmit such letter to a Facebook page administrator, or to "telephone" the Assistant District Attorney to inform her about the cease-and-desist letter sent. Viewing the summary judgment evidence in the light most favorable to Sullivan, the summary judgment record indicates merely that Crosby pursued personal objectives without using or misusing the power granted to her by the state to achieve her personal aim.

### C. Plaintiff's Arguments in Opposition to Summary Judgment Are Unavailing.

In resisting summary judgment, Plaintiff's primary argument is that Crosby is a justice of the peace and that the cease-and-desist letter was sent in her official capacity or at least "does not omit her office," insofar as it demands that Plaintiff cease all "statements that in any way pertain to Ms. Terry Crosby in any capacity."[47] As set forth above, however, resort to labels is no substitute for establishing as a matter of substance whether a public official acted in her official or personal capacity. Plaintiff's other arguments, summarized here, are likewise unavailing and fail to withstand summary judgment.

First, Sullivan appears to concede that threatening private legal action against another is not state action.[48] He thus pivots to focus on his characterization of the cease-and-desist letter, which was that it was a sham ultimately aimed at invoking the criminal process. Ultimately, he fails to identify evidence in the record indicating that or how Crosby "used her office" in hiring a private attorney to send a letter or in

[47] ECF No. 74 at 9.
[48] ECF No. 74 at 13-14.

telephoning a local prosecutor to inform her of the same. To accept Sullivan's argument, without supporting evidence, would be to determine that any action by a justice of the peace, no matter the context, is state action. This elevates labels over substance in defiance of the case law, which underscores that public officials have private lives too. Indeed, in failing to identify any evidence of state action, Plaintiff fails to observe "the constitutional boundary between the governmental and the private," and therefore ignores the case law underscoring that "the state-action doctrine protects a robust sphere of individual liberty." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804, 808 (2019).

Second, Plaintiff contends that Defendants fail to address his complaint's allegation that the letter was sent to a prosecutor "with the intent to mislead law enforcement and improperly involve them in a matter that does not involve criminal activity."[49] Plaintiff concludes that "[a] state official who enlists the criminal power of the State to punish protected criticism of her own official conduct, and uses her position to procure the removal of that criticism, is acting under color of state law."[50] Without citing to any evidence in the record indicating what criminal consequences befell him as the result of Crosby's call to the prosecutor, Sullivan argues that even if Crosby's grievance was personal, she used her office to accomplish it because "[a]n ordinary citizen who telephoned the District Attorney about a neighbor's Facebook posts would not obtain a prosecutorial response[.]"[51] The summary judgment record

---

[49] ECF No. 74 at 4.
[50] ECF No. 74 at 9.
[51] *Id.* at 11.

begs the question, what response? More pertinently, Sullivan cites nothing in the summary judgment record indicating that Crosby's justice of the peace position empowered her to threaten private civil litigation against a critic, that she was empowered as justice of the peace to call the prosecutor regarding the same, or that she invoked her authority in calling the local prosecutor. He fails to identify a genuine dispute concerning any material fact. Sullivan alludes to Crosby "invoking [the] criminal process" but he cites no evidence in the record that such process was invoked nor any source of authority empowering Crosby as justice of the peace to invoke the criminal process against another. Again, Plaintiff ignores the case law's requirement that the Court look beyond labels to determine the substance of the challenged conduct. Any private citizen in their personal pursuits may hire an attorney to send a cease and desist letter and could call a prosecutor or law enforcement official to discuss or report another's conduct. Plaintiff himself contends that Crosby "personally telephoned [the ADA], injecting a private grievance into the criminal apparatus."[52] Absent evidence suggesting conduct attributable to the State, Crosby's private conduct, or private grievance, is within the sphere of her private individual liberty. Section 1983 is not implicated.

Third, Plaintiff focuses on the content of his Facebook post in an attempt to prove Crosby's state action, contending that he "produced the actual post that was removed (Pl. Ex. 4), which on its face is criticism of Crosby's official and notarial

---

[52] *Id.* at 5.

conduct, not a false statement of fact."[53] He maintains that Defendants have not identified a defamatory statement in Plaintiff's post, which Plaintiff characterizes as protected speech. His arguments, again, misapprehend the state-action inquiry. In analyzing whether a public official has engaged in public or private conduct, it is Crosby's conduct and, here, in part, her speech in response to his that counts for the state-action test, not Sullivan's. *See Mackey v. Rising*, 106 F.4th 552, 563 (6th Cir. 2024) (observing that whether or not the plaintiff's Facebook posts motivated the city commissioner defendant's call, the defendant's response—a threat of violence—did not fall within the defendant's "bailiwick" as city commissioner). Even though Plaintiff argues that his Facebook post touched on Crosby's public role, there is no evidence in the record indicating that Crosby pursued the cease-and-desist letter through any actual or apparent authority of her public office, that she abused her position, or that her position as justice of the peace enabled her to hire a private attorney to threaten civil redress for Sullivan's posts or to alert third-parties, including law enforcement, regarding the cease-and-desist letter she sent.

Finally, Plaintiff purports to identify contradictions in the record pertaining to who transmitted the letter to the Facebook administrator, whether the letter was ultimately sent to the prosecutor, and whether Monroe was paid for drafting the letter. Even if Plaintiff identified actual contradictory facts in the record, which he fails to do, none of these facts are material.

---

[53] ECF No. 74 at 6. Sullivan appears to include a bill of sale (and other illegible text) in the Facebook post where he wrote "I purchased a mobile home from Vickie Harper[;] she purchased it from Terri." ECF No. 74-6.

As for the first purported factual controversy regarding who sent the cease-and-desist letter to the Facebook administrator, Sullivan contends that Crosby's amended interrogatory response states that she "forwarded" the letter to Facebook administrator Michelle Ricks, whereas Crosby's affidavit suggests she "emailed" the letter, but Defendants' statement of facts indicates that "Monroe emailed it." Semantics aside, according to the record evidence—not the statement of facts assertion which is not competent summary judgment *evidence*—Crosby sent the letter to the Facebook administrator. There being no actual factual controversy, there is nothing to resolve in favor of the nonmoving party. *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013). In any event, how the Facebook administrator received the cease-and-desist letter is not material as it would not affect the outcome of the state-action issue.

As for the second purported factual controversy, Sullivan contends that the cease-and-desist letter indicates a copy was sent to the prosecutor but that the other evidence indicates that the letter was not sent to the prosecutor. Instead, the record indicates that Crosby "telephoned" ADA Taylor about the letter. Even assuming a genuine dispute, Plaintiff fails to indicate how this fact is material. Regardless of whether ADA Taylor received a copy of the letter or merely discussed its contents with Crosby has no bearing on the outcome here.

As for the third purported controversy, Sullivan contends that Defendants attest in their affidavits that Monroe was "retained and hired by Crosby personally" but that "their compelled discovery admits Monroe charged Crosby nothing, and no

engagement letter, fee agreement, or invoice was ever produced."[54] Sullivan fails to indicate how this issue—whether Monroe "charged" Crosby or whether Crosby paid Monroe—could be material to the merits of his case or the state-action inquiry. It is not. Because it is undisputed that Crosby (and not the State or Parish) retained Monroe, whether and how Crosby paid Monroe for his professional services in drafting and mailing the cease-and-desist letter is not probative of whether Crosby and Monroe acted pursuant to state authority in connection with transmitting the letter.

Ultimately, Plaintiff's opposition misapprehends a subtle but important thread in the case law. Just because Crosby serves as a justice of the peace does not mean that everything she does is attributable to the state. Yet that is the singular hook offered by Sullivan to anchor Section 1983 liability. Nothing in the summary judgment record indicates that Tangipahoa Parish or justice of the peace duties had anything to do with Crosby retaining Monroe to draft a cease-and-desist letter which was transmitted to Sullivan and a Facebook administrator, and which Crosby spoke about to a local prosecuting attorney. *See, e.g., Baldridge v. Vance*, No. 26-39, 2026 WL 3094395, at *4-5 (E.D. Ky. Oct. 16, 2026) (finding neither part of the state-action test met and granting schoolboard member's motion to dismiss complaint brought by a vocal board critic challenging board member's conduct in seeking a protective order against critic). Where, as here, the record indicates that Crosby, a public official,

---

[54] ECF No. 74 at 8 (citing Plaintiff's Exhibit 7, which are Defendants' responses to Plaintiff's requests for production, the latter of which are not in the summary judgment record and thus the responses have no context).

"pursue[d] personal objectives without using h[er] official power as a means to achieve h[er] private aim, [s]he has not acted under color of state law." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 464 (5th Cir. 2010) (quoting *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir.2002).

* * *

Two final observations. First, the Court observes that, in doubling down on labels and conclusions—Plaintiff's contention that Crosby as a public official must have acted in her official capacity—much of Plaintiff's opposition focuses on *his* free speech rights, the constitutional deprivation element of his Section 1983 claim. Because Defendants seek summary judgment on the state action element, and the Court indeed finds an absence of proof on this element on which Plaintiff bears the burden of proof, the Court need not reach the issue of whether Plaintiff can prove that his constitutional rights were violated. It is nevertheless worth underscoring that, where a Section 1983 plaintiff fails to prove that a public official was acting for the state in abridging another's speech, the plaintiff necessarily cannot show that his First Amendment free speech rights were violated. This is so because the First Amendment "prohibits only governmental abridgement of speech[; it] does not prohibit *private* abridgement of speech." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 804, 808 (2019) (citations omitted, emphasis in original). This means that private persons, like Sullivan and Crosby, when she acts as a private citizen, may speak freely about each other to others and may seek to *privately* abridge each other's speech without federal redress or constraint; if either claims they are harmed

by the other's speech or abridgment of speech, they may seek redress privately among themselves or through tort litigation. Simply put, the First Amendment is not available to wield as a sword against a fellow private citizen, even if she also happens to be a public official: "[t]he Free Speech Clause of the First Amendment constrains governmental actors and protects private actors." *Id.*

Second, on the record presented, Plaintiff would not succeed in proving the constitutional deprivation element of his Section 1983 claim. No party briefs the law applicable to the First Amendment retaliation theory purporting to anchor Plaintiff's Section 1983 claim. Regardless, it is settled that the second element of a First Amendment retaliation claim requires proof that "the defendant's actions under color of law caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity." *See Reitz v. Woods,* 85 F.4th 780, 789-90 (5th Cir. 2023) (cleaned up); *McLin v. Ard*, 866 F.3d 682, 696 (5th Cir. 2017). This "requires some showing that the plaintiff's exercise of free speech has been curtailed." *Reitz*, 85 F.4th at 789; *McLin*, 866 F.3d at 696 (both citing *Kennan v. Tejada*, 290 F.3d 252, 258 (5th Cir. 2002)). There is no evidence in the summary judgment record indicating that Sullivan reduced or changed his exercise of free speech in any way as a result of the cease-and-desist letter. Indeed, Sullivan's January 22, 2025 letter[55] in response to the cease-and-desist letter suggests the opposite. There, Sullivan writes that his free speech activity has not been and will not be curtailed as a result of the cease-and-desist letter. This uncontroverted fact

[55] ECF No. 74-11.

would independently doom his First Amendment retaliation theory, the constitutional deprivation element of his Section 1983 claim.

## IV. CONCLUSION

Section 1983's text "protects against acts attributable to a State, not those of a private person." *Lindke*, 601 U.S. 187, 194-95 (2024) (generally observing that "ordinarily" § 1983 applies to actions of police officers but "absent some very unusual facts, no one would credit . . . a plaintiff's complaint [regarding his] neighbor"); *Hernandez v. Causey*, 124 F.4th 325, 336 (5th Cir. 2024) (observing that "'state action exists only when' the constitutional deprivation 'ha[s] its source in state authority'"). The state-action doctrine demands that Sullivan show that Crosby had actual authority (and that Monroe acted jointly pursuant to that state authority) to send and disseminate a cease-and-desist letter threatening civil litigation; and that Defendants purported to exercise that official authority. Absent from the summary judgment record is any evidence indicating that Crosby was clothed with state authority or acted in her official capacity as a justice of the peace when she retained Monroe, an attorney in private practice, to draft a cease-and-desist letter that was disseminated to Sullivan, a third-party Facebook administrator, and a prosecutor. Accordingly,

**IT IS ORDERED** that Defendants' motion[56] for summary judgment is **GRANTED**. Plaintiff's Section 1983 claim is hereby **DISMISSED WITH PREJUDICE**.

---

[56] ECF No. 66.

**IT IS FURTHER ORDERED** that the following motions are **DISMISSED AS MOOT**: Plaintiff's motion[57] requesting this Court's review of the magistrate judge's order denying him leave to amend his complaint; Plaintiff's motion[58] seeking to supplement his witness and exhibit list; and Defendants' motion[59] to amend the scheduling order to allow amendment of their answer.

**IT IS FURTHER ORDERED** that Plaintiff's motion[60] for sanctions is **REFERRED** to the magistrate judge for determination under 28 U.S.C. § 636(b)(1).

New Orleans, Louisiana, this 19th day of November, 2026.

BRANDON S. LONG
UNITED STATES DISTRICT JUDGE

[57] ECF No. 47.
[58] ECF No. 49.
[59] ECF No. 54.
[60] ECF No. 37.